**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **EDWARD HABAYEB** | : | **Hon. Joseph H. Rodriguez** |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil No. 15-5107** |
| **v.** | : | |
| | : | |
| **CORPORAL SHAUN BUTLER,** | : | |
| **et. al.,** | : | <u>**Opinion**</u> |
| | : | |
| **Defendants.** | : | |

This matter comes before the Court on Motion of the Defendants Chief Rodney Sawyer and Mantua Township for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12 (c). The Court has considered the written submissions of the parties, without oral argument.   For the reasons that follow, Defendants Chief Rodney Sawyer's ("Sawyer") and Mantua Township's ("Mantua") motion is granted in part and denied in part. Plaintiff will be given leave to amend his Complaint consistent with this Opinion.

## I.    <u>Background</u>

Plaintiff Edward Hayabeb ("Hayabeb") was arrested by Mantua police officers on July 5, 2013 and charged with driving under the influence of alcohol or drugs, in violation of N.J.S.A. 38:4-50, reckless driving, in

violation of N.J.S.A. 39:4-96, failure to give a proper turn signal, in violation of N.J.S.A. 39:4-126, and failure to maintain a lane, in violation of N.J.S.A. 39:4-88b. A naturalized citizen of Palestinian descent, Hayabeb claims he was stopped by police after he diverted his car from road debris and wayward trashcans, causing him to navigate over the double yellow traffic line.   Compl. ¶ 10.   At some point during the stop, Hayabeb was in the presence of three Mantua police officers, who despite acknowledging the lack of alcohol odor, proceeded to conduct a field sobriety test. Id. at¶¶ 11-13, 15.   Plaintiff claims that Defendant Shield was not properly trained to administer the field tests and that he was subjected to heightened scrutiny because one of the police officers declared that Hayabeb's drivers' license looked fake.   Id. at ¶¶ 16-17.   Plaintiff was taken to the Mantua Police Department where he performed several sobriety tests. Id. at ¶¶ 18-21.

Plaintiff claims he had trouble reciting the "reverse alphabet" because English is not his native language.   Id. at ¶ 22.   Likewise, the "finger to the nose" test was challenging because Plaintiff had difficulty reading the written instructions.   Id.   Plaintiff claims that Officer Shield administered the first tests, but that the other officers had to intervene at various points

to explain the tests and to retest.   Id. at ¶ 22. Eventually, Defendant Hauss administered a breathalyzer test; the result was 0.00%.   Id. at ¶ 23. Plaintiff claims that on July 5, 2013, he was only charged with failure to give a proper signal and failure to maintain a lane.   Id. at ¶24.

Afterwards, out of a concern for his alleged mistreatment, he made an appointment with Chief Sawyer for July 8, 2013.   That meeting was cancelled and Plaintiff claims he was issued two more citations for driving under the influence of alcohol or drugs and for reckless driving. Id. at ¶ 26. Plaintiff's proof of the ex post facto charges comes in the form of post marked envelopes, dated July 9, 2013 and received by Plaintiff on July 10, 2013, attached to the Complaint as Exhibit B. Id. at ¶ 26. Plaintiff claims that the charges for driving under the influence of alcohol or drugs, reckless driving, and failure to give a proper signal were all dismissed voluntarily by Mantua. Id. at ¶ 27.

Hayabeb brings several causes of action against the Defendants, including false arrest, negligent infliction of emotional distress, and claims pursuant to Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 663–64 n. 7, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).   The claims are inartfully plead and each count is titled as against "all defendants" without

an specification as to the individualized attachment of liability: Count I Malicious Prosecution, pursuant to 42 U.S.C. §1983; Count II Equal Protection, pursuant to 42 U.S.C. §1985; Count III Violation of the Fourth Amendment/Search and Seizure, pursuant to 42 U.S.C. §1983; Count IV False Arrest; Count V Negligent and/or Intentional Infliction of Emotional Distress; Count VI Deliberate Indifference/ Gross Negligence, pursuant to 42 U.S.C. §1983; Count VII Harm, pursuant to the Restatement Second of Torts §870; Count VII Failure to Train, pursuant to 42 U.S.C. §1983; and Count IX Conspiracy, pursuant to 42 U.S.C. §1985.

At issue here are the claims against Defendants Sawyer and Mantua. Sawyer and Mantua seeks judgment on the pleadings as to the claims plead under 42 U.S.C. §1983 based on respondeat superior or vicarious liability (Counts I, II, III, VI and VII), the Monell claims (Counts II and VIII) and the conspiracy claim (Count IX) because such claims are insufficiently plead, and the intentional tort claims (Counts V and VII) as barred by the New Jersey Tort Claims Act, N.J.S.A., 52:2-10.

## II.   **Standard on Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings. The movant under Rule 12(c) must show

clearly that no material issue of fact exists and that it is entitled to judgment as a matter of law. Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 29091 (3d Cir. 1988)). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); see also Fed.R.Civ.P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. Phillips, 515

5

F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

### III.   <u>Plaintiff's Constitutional Claim Against Mantua</u>

In <u>Monell</u>, 436 U.S. at 691-94, the Supreme Court stated that a municipality could not be held liable under Section 1983 pursuant to a theory of respondeat superior. Municipalities are only held responsible "for their own illegal acts." <u>Connick v. Thompson</u>, 131 S.Ct. 1350, 1359 (2011) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479 (1986)).

### A. **42 U.S.C.1983**

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. <u>See</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). By its own words, therefore, Section 1983 "does not … create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir.2006) (citing Baker, 443 U.S. at 145, n. 3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of her rights by a person acting under the color of state law.

Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

B. **Municipal Liability**

Mantua a municipality. A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell, 436 U.S. 691. However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom. Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407 (1997).

Courts have created a "two-path track to municipal liability ... depending on whether the allegation is based on municipal policy or custom." Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decision maker," but that is "so widespread as to have the force of law." Bryan County v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Municipalities are not liable for acts of police officers unless a municipal policy or custom amounts to a "deliberate indifference to the rights of people with whom the police come into contact." Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Deliberate indifference means that " 'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." Harris, 489 U.S. at 389 (quoting

Pembaur, 475 U.S. at 483–84 (1986) (plurality) (Brennan, J.)). Thus, a municipality's inadequate training or supervision does not give rise to liability unless city policymakers are "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights ... [and they] choose to retain that program." Connick, 131 S.Ct. at 1360. Similarly, widespread behavior by police officers does not amount to a municipal custom unless there is "knowledge and acquiescence by the decisionmaker." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (citing Watson v. Abington Tp., 478 F.3d 144, 156 (3d Cir. 2007)) (further citation omitted). Finally, the plaintiff must also show that the alleged policy or custom was the proximate cause of the injuries suffered. Watson, 478 F.3d at 156 (citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (further citation omitted)).

## IV.   Analysis

### A. Plaintiff's Section 1983 Claims Against Defendants Based Upon Respondeat Superior and/or Vicarious Liability

Plaintiff's claims against Mantua and Chief Sawyer based upon respondeat superior and/or vicarious liability as plead in Counts I, II, III, VI and VIII are dismissed. Plaintiff alleges throughout these counts that Defendants were acting with apparent authority under the supervision of

10

their superiors and that, as a result, Defendants Mantua and Chief Sawyer are vicariously liable under agency principals and respondeat superior.1 Plaintiff's bare allegations that Mantua and Chief Sawyer tacitly approved the behavior and actions of the arresting Mantua police officers is insufficient to state a Section 1983 claim for supervisory liability.

Mantua, as a municipality, is not liable for the misconduct of its employees under Section 1983 on a theory of respondeat superior. Monell, 436 U.S. at 663–64 n. 7. As a supervisor, Chief Sawyer is not liable under § 1983 solely on a theory of respondeat superior. Connick, 131 S.Ct. at 1358–61; City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell, 436 U.S. at 690–91, 694 (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional

---

1  In Count I, Plaintiff alleges that "Mantua Township and the Chief of Police are liable for the wrongful conduct of the Defendant officers under the law of vicarious liability, including the doctrine of Respondeat superior because of the agency relationship described above." Compl. ¶ 41.   Count II alleges a policy and custom with the inference of vicarious liability. Id. at ¶ 47. Count III alleges that the "Defendant Officers, and vicariously the Chief and Township" are liable for Plaintiff's alleged false arrest. Id. at ¶ 51. Likewise, Count VI seeks to hold Mantua and Chief Sawyer "liable for the wrongful conduct of the Defendant officers under the law of vicarious liability, including the doctrine of Respondeat superior because of the agency relationship described above." Id. at ¶ 81. Finally, Count VIII alleges that Defendant Mantua Township, by and through its agents, exercised a deliberate indifference to the well-being and legal rights of the Plaintiff." Id. at ¶ 91.

Facility, 318 F.3d 575, 583–84 (3d Cir. 2003).

In addition, the Complaint is devoid of any allegation that could support an inference that Chief Sawyer was personally involved or even aware of Hayabeb's arrest on July 5, 2013. See Durmer v. O'Carroll, 991 F.2d 64, 69 n. 14 (3d Cir. 1993). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Here, the claims against Chief Sawyer are dismissed to the extent that these claims are based solely on the respondeat superior theory. Durmer, 991 F.2d at 69 n. 14.   As a result, to the extents the claims against Mantua and Chief Sawyer seek relief based upon the theories of respondeat superior and vicarious liability, as plead in Counts I, II, III, VI and VIII, are dismissed in part as to these defendants.

B.  Plaintiff's Monell Claims Plead in Counts II and VIII

To the extent the claims set forth in Counts II and VIII seek redress under Monell, these counts are dismissed without prejudice and Plaintiff is given leave to amend the Complaint.

12

To survive a motion for judgment on the pleadings, Plaintiff "must identify a custom or policy, and specify what that custom or policy was." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). "[A] single incident of unconstitutional activity is not sufficient to impose liability under Monell[.]" City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); see Ingram v. Twp. of Deptford, 911 F.Supp.2d 289, 302 (D.N.J. 2012) (finding plaintiff's Monell claim deficient where the complaint cited an unconnected past incident of excessive force).

A municipality's failure to properly train its police officers can amount to a "custom" that triggers liability under section 1983. See City of Canton, 489 U.S. at 388. Such liability is reserved for cases where the failure to train evidences a "deliberate indifference" to the constitutional rights of that municipality's citizens. Id. at 389. An allegation suggesting a training program is inadequate is insufficient. Id. at 390. Instead, Plaintiff must "identify a failure to provide specific training that has a causal nexus with his or her injuries and ... demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. Cnty. of Bucks, 125 F.3d 139, 144 (3d Cir. 1997).

13

"[D]eliberate indifference may be established when a policymaker has knowledge of a 'pattern of similar constitutional violations by untrained employees' but takes no action to augment or alter the municipality's employee training programs accordingly." Grandizio v. Smith, No. CIV. 14-3868, 2015 WL 58403, at *5 (D.N.J. Jan. 5, 2015) (quoting Lapella v. City of Atlantic City, No. 10–2454, 2012 WL 2952411, at *7 (D.N.J. July 18, 2012) (further citations omitted)).

Even a liberal reading of Plaintiff's complaint compels the conclusion that Plaintiff fails to adequately sets forth sufficient factual allegations to demonstrate a plausible claim for relief for municipal liability on theories of failure to train and/or deliberate indifference. At best, Plaintiff's Complaint contains imperfect formulaic recitations of the legal standards under Monell. In conclusory fashion, it alleges that "Defendants were acting under a custom and/or practice and/or official policy of Mantua Township and its police department and its chief" and that Mantua and Chief Sawyer "inadequately trained" the arresting defendants. Compl., ¶¶ 75, 91. The Complaint is also speculative and predicated upon sweeping legal conclusions. Morse, 132 F.3d at 906.   In Paragraph 47, the Complaint states "Plaintiff's inadequately trained claim *appears to be similar* to other

14

similarly situated persons and indicates that this behavior by Mantua Township Police is part of a larger pattern of selective enforcement by the Defendants that *may rise* from a custom and/or practice and/or policy of the Defendant Police Chief and Defendant Mantua Township." Compl. at ¶ 47 (emphasis added).

The Court finds that these allegations, when read together with the attachments to the Complaint and the fact section of the Complaint amount to no more than a mere recitation of the legal elements necessary to establish municipal liability under Section 1983. <u>Morse</u>, 132 F.3d at 906. The Complaint fails to allege actual facts suggesting that Mantua promulgated an official policy or maintained a custom that was the "moving force" that led to the alleged deprivation of Plaintiff's constitutional rights. In addition, Plaintiff merely speculates that there *may be* relevant conduct that Mantua or Chief Sawyer failed to remediate.   Because Plaintiff has not specified what custom or policy of Mantua and or Chief Sawyer led to Plaintiff's alleged deprivations, the claims under <u>Monell</u> plead in Counts II and VIII are dismissed without prejudice.

In addition, Plaintiff's failure to train claims are similarly deficient because "Plaintiff has not identified a failure to provide specific training, or

identified any shortcomings in any existing training programs, that caused the specific harm to the Plaintiff." Grandizio, No. CIV. 14-3868 RBK, 2015 WL 58403, at *6-7. Moreover, Plaintiff's attempt to demonstrate an alleged a pattern of similar constitutional violations is unavailing.   In this regard, Plaintiff appends to his opposition brief a copy of a Complaint against Mantua, a notice of a settlement, and an article detailing the settlement of a case brought against Mantua by a Plaintiff of Arabic descent.2  See Pl. Opp. Br., Ex. A.

As a result, the Complaint lacks the factual nexus and/or specificity to connect Plaintiff's alleged constitutional deprivation to the failure of Mantua and/or Chief Sawyer to train and/or be deliberately indifferent. See Lapella, No. 10–2454, 2012 WL 2952411, at *8 (finding that plaintiff did not adequately plead a failure to train claim because the complaint contained only conclusory allegations). For the same reasons, Plaintiff's alleged custom or practice claim fails. Defendants' motion for judgment on

---

2 On a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). Exhibits attached to a brief may be considered if the documents are "undisputedly authentic" and "the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Defendants did not file a reply brief, so there is no challenge to the Plaintiff's use of the documents.   However, to the extent that the documents are at all relevant, there is no connection to the present matter.   The only inference that can be fairly drawn is that Mantua has been sued by a man of Arabic descent in the past and settled the case.   Cases settle for many reasons and the Court will not assume that the settlement in the case referenced by Plaintiff was an admission of liability by Mantua or that it highlights a lack of training, deliberate indifference, or custom or policy.

the pleadings is granted as to the <u>Monell</u> claims; the dismissal is without

prejudice as to Counts II and VIII and Plaintiff will be given leave to

amend.

    C.  <u>Plaintiff's Common Law Claims Plead in Counts IV, V, and VII</u>

Plaintiff brings of false imprisonment/false arrest (Count IV),

intentional infliction of emotional distress (Count V), and harm (Count VII)

under the New Jersey Tort Claims Act ("NJTCA").   The NJTCA provides,

"[a] public entity is not liable for the acts or omissions of a public employee

constituting a crime, actual fraud, actual malice, or willful misconduct."

N.J.S.A. 59:2–10. The Comment to this section explains,

> This provision recognizes the existing law and public
> policy that a public entity should not be vicariously liable for
> such conduct of its employees. In addition it adopts the concept
> noted in <u>O'Connor v. Harms</u>, <u>et al.</u>, 111 N.J.Super. 22, 26–27,
> 266 A.2d 605 (App.Div. 1970) that: "a public corporation such
> as a city or other public body, by reason of its being an artificial
> legal entity created by law to perform limited governmental
> functions, cannot entertain malice, as a public corporation."

It is well settled that "a public corporation, such as a city or other

public body, by reason of its being an artifical [sic] legal entity created by

law to perform limited governmental functions," cannot perform an

intentional tort on an individual. <u>See</u> <u>O'Connor v. Harms</u>, 266 A.2d 605,

26–27 (N.J.Super.Ct.App.Div. 1970) (holding that defendant board of

education is an artificial entity and therefore could not entertain malice against plaintiff); see also Farris v. County of Camden, 61 F.Supp.2d 307, 346–67 (D.N.J. 1999) (holding that principle enunciated in O'Connor "applies with equal force to tort claims where scienter is an element of the cause of action."). Thus, "courts in this District have interpreted Section 59:2–10 of the New Jersey Tort Claims Act to bar public entities from liability for claims of ... intentional infliction of emotional distress." Warnett v. Corr. Med. Svcs., No. 07–1291, 2008 WL 930739, at *7 (D.N.J. Mar.31, 2008). However, claims for false imprisonment/ false arrest may proceed against municipalities under the NJTCA where it is alleged that that the municipal employee was acting in the scope of employment and without "willful misconduct." See N.J. Stat. Ann. §§ 59:2–2a, –10; see also O'Brien v. Borough of Woodbury Heights, 679 F.Supp. 429, 439 (D.N.J. 1988); see also Matos v. City of Camden, No. CIV. 06-205, 2009 WL 3756652, at *2 (D.N.J. Nov. 9, 2009).

Here, Plaintiff concedes that his claims as plead in Counts IV and VII, for false imprisonment/false arrest and harm fail to state a claim for which relief can be granted. See Pl. Br., pp. 11-12. Plaintiff agrees to voluntarily dismiss Counts IV and VII as to both Defendants Mantua and Sawyer. Id.

18

Likewise, Plaintiff concedes that his claim as plead for intentional infliction of emotional distress in Count V fails to state a claim for which relief can be granted as to Mantua and voluntarily dismisses this claim. Id.   As a result, Defendant's motion is granted as to Counts IV and VII and the intentional infliction of emotional distress claims plead in Count V as to defendant Mantua.

However, Plaintiff contends that Count V also seeks redress for negligent infliction of emotional distress and argues that Chief Sawyer can be held liable for intentional infliction of emotional distress.   Plaintiff is correct that Chief Sawyer is not automatically immune from liability under the NJTCA. See Mantz v. Chain, 239 F.Supp.2d 486, 508 (D.N.J. 2002) ("While the TCA expressly bars recovery of punitive damages against public entities ..., the New Jersey courts have held that 'no such immunity exists [under the TCA] for public employees.' "). However, Plaintiff's claims are lacking for other reasons.

To establish a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4) plaintiff's

emotional distress was 'so severe that no reasonable man could be expected to endure it.'" Swingle v. Novo Nordisk, Inc., 2009 U.S. Dist. LEXIS 76991, at *23–24, 2009 WL 2778106 (D.N.J. Aug. 27, 2009) (quoting Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 365–66, 544 A.2d 857 (N.J. 1988)). A liberal reading of Plaintiff's Complaint compels the conclusion that Plaintiff has not met this pleading burden and the claim for intentional infliction of emotional distress against Chief Sawyer in Count V is dismissed without prejudice. Plaintiff will be given leave to amend his Complaint.

To recover for negligent infliction of emotional distress, Plaintiff must allege two things: 1) that Defendants' negligent conduct placed him in reasonable fear of immediate personal injury and 2) that he suffered emotional distress which manifested in substantial bodily injury or sickness. Jablonowska v. Suther, 195 N.J. 91, 948 A.2d 610, 617 (2008) (citing Falzone v. Busch, 45 N.J. 559, 214 A.2d 12, 12 (1965)).   In New Jersey, "where fright does not cause substantial bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability." Id.   Here, even accepting the allegations in the complaint as true and viewing the Complaint in the light most favorable to the Plaintiff, Plaintiff fails to set forth sufficient facts

20

demonstrating he was placed "in reasonable fear of immediate personal injury." <u>Jablonowska</u>, 195 N.J. at 104, 948 A.2d 610. As a result, Count V is dismissed against Mantua and Chief Sawyer, as to the claim of negligent infliction of emotional distress, without prejudice. Plaintiff will be given leave to amend his Complaint.

D. <u>Count IX Conspiracy in Violation of 42 U.S.C. § 1985</u>

Count IX alleges a conspiracy claim, pursuant to 42 U.S.C. § 1985. Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To prove that Defendants conspired to violate their civil rights, in violation of 42 U.S.C. § 1985(3), Plaintiff must prove the existence of (1) a conspiracy motivated by invidious discriminatory animus, (2) for the purpose of depriving them, either directly or indirectly, of the equal protection of the laws, (3) that there was an act in furtherance of the conspiracy, and (4) that she was, as a result, injured in her person or deprived of any right or privilege of a citizen of the United States. <u>See</u> <u>Farber v. City of Paterson</u>, 440 F.3d 131, 134 (3d Cir. 2006).

Defendants move for dismissal on the ground that Plaintiff's claim is nothing more than a formulaic recitation of the law.    Plaintiff's Complaint states:

> 94. Defendant Mantua Township and the Defendant Officers and the Defendant Police Chief engaged in a conspiracy to deprive Plaintiff of his right to equal protection
> 95. By and through the facts alleged above, including, but not limited to, Plaintiff being subjected to heightened scrutiny for his color and race, Plaintiff's arrest and ongoing detention despite the lack of probable cause and a 0.00 BAC and the subsequent retaliatory charges issued after he requested a meeting with the Defendant Chief of Police, the Defendants committed acts in furtherance of this conspiracy.
> 96. As a consequence of these actions, Plaintiff's federal civil rights, guaranteed under both the United States Constitution and Federal Statutes, were violated by Defendants.

Plaintiff's Complaint lacks the predicate facts to establish a claim and Defendants' Motion is granted.    Count IX is dismissed without prejudice. Plaintiff will be given leave to amend his Complaint.

## V.    Conclusion

For the reasons stated above, Defendants' motion is granted in part. As to Defendants Mantua and Chief Sawyer, Plaintiff's claims plead in Counts I, II, III, VI and VIII, are dismissed with prejudice, in part, as to the extent these Counts are predicated solely upon respondeat superior. Counts II and VIII are dismissed without prejudice and Plaintiff will be given leave

to amend his Complaint. Counts IV and VII are dismissed as to Defendants Mantua and Sawyer. Plaintiff's claim for intentional infliction of emotional distress plead in Count V is dismissed as to Mantua and dismissed without prejudice as to Chief Sawyer, with leave to amend the Complaint. Count V is dismissed without prejudice against Mantua and Chief Sawyer, as to the claim of negligent infliction of emotional distress and Plaintiff will be given leave to amend his Complaint.    Plaintiff's claim of conspiracy Count IX is dismissed without prejudice, with leave to amend the Complaint.

An appropriate Order shall issue.

Dated: March 29, 2016

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE